**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALERY LATOUCHE,<br><br>     Plaintiff,<br><br>     v.<br><br>MERCK & CO., INC.,<br><br>     Defendant. | Civil Action No. 22-1619 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court on Defendant Merck & Co., Inc.'s ("Merck") Motion to Dismiss pro se Plaintiff Valery LaTouche's ("LaTouche") Complaint. (ECF No. 5.) LaTouche opposed (ECF No. 10), and Merck replied (ECF No. 12). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Merck's Motion.

**I. BACKGROUND**

  The Court liberally construes LaTouche's Complaint and accepts all well-pleaded facts as true. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). It notes, however, that LaTouche's Complaint contains only nine paragraphs of allegations.

  In 2005, LaTouche was incarcerated at the Rockland County Correctional Facility in New York. (Compl. ¶ 4, ECF No. 1-1.) During his incarceration, doctors diagnosed LaTouche with

depression and prescribed him Remeron. (*Id.*)¹ In May 2005, LaTouche discovered a lump in his chest, which a doctor diagnosed as gynecomastia. (*Id.* ¶ 5.) Doctors then referred LaTouche for a biopsy, but that operation never took place due to LaTouche's incarceration. (*Id.* ¶ 6.) Fourteen years later, LaTouche began inquiring as to what entity made Remeron, eventually learning that Merck manufactured the drug. (*Id.* ¶ 7.) Then in 2021, another doctor at Sing Sing Correctional Facility told LaTouche that he had a spike in his hormonal glands and possibly a benign tumor. (*Id.* ¶ 8.)² The Complaint does not allege that LaTouche's 2021 diagnosis resulted from taking Remeron.

Later that year, LaTouche sued Merck in a two-count Complaint in state court. The Complaint alleged "Strict Product Liability: Manufacture, Distribution of a Defective Product" and "Strict Product Liability: Failure to Warn." (*Id.* at *3-4.)³ Merck removed to this Court and filed this Motion to Dismiss, where it argues that LaTouche's claims are time barred and inadequately pled. (*See generally* Def.'s Moving Br., ECF No. 5-1.) LaTouche opposed, asserting—among other arguments—that the Court should equitably toll the statute of limitations. (*See generally* Pl.'s Opp'n Br., ECF No. 10.) Merck's Motion is now ripe for resolution.

**II.     LEGAL STANDARD**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citing *Pinker*, 292 F.3d 361, 374 n.7). "To

---

¹ The Complaint incorrectly refers to the drug as "Rameron."

² LaTouche is currently incarcerated at the Sing Sing Correctional Facility. (ECF No. 10-2 at *2.)

³ Pin-cites prefaced by asterisks refer to the pagination atop the CM/ECF header.

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Importantly, on a Rule 12(b)(6) motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, "a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because [they] proceed[] pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

In addition, although Rule 12(b) does not explicitly permit the assertion of a statute of limitations defense by a motion to dismiss, the so-called "Third Circuit Rule" allows a defendant to assert a limitations defense in a Rule 12(b)(6) motion "if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)).

### III. **DISCUSSION**

Merck asserts that the statute of limitations bars LaTouche's claims and that, in all events, the Complaint fails to state a claim for relief. (*See* Def.'s Moving Br. 1.) The Court addresses each argument in turn.

### A. The Court Rejects Merck's Statute-of-Limitations Defense.

Merck argues that the statute of limitations bars LaTouche's claims because the Complaint alleges that LaTouche learned that Remeron caused gynecomastia as early as May 2005. (*See* Def.'s Moving Br. 5-6.) For that argument, Merck hangs its hat on this allegation in the Complaint: "Approximately in May of 2005, . . . the plaintiff was . . . seen by a physician who diagnosed him with gynecomastia, as a result of his digestion of R[e]meron." (Compl. ¶ 5.) The Court disagrees with Merck.

Start with the law. Courts generally will not consider fact-intensive affirmative defenses (like statute-of-limitations defenses) on a motion to dismiss. *See Hull v. Glob. Digit. Sols., Inc.*, No. 16-5153, 2017 WL 6493148, at *8 (D.N.J. Dec. 19, 2017) (reasoning that statute-of-limitations defenses "are typically fact intensive, and thus, courts are reluctant to dismiss a complaint as untimely prior to discovery" (citations omitted)). Because of this high bar at the motion-to-dismiss stage, a defendant must show not only that an applicable statute of limitations bars a plaintiff's claim but also that no possibility of tolling applies. *See Adie v. Stewart*, No. 20-6200, 2020 WL 7488897, at *3 (D.N.J. Dec. 21, 2020).

Turning to the substance, the statute of limitations for strict-products-liability claims is two years under New Jersey law. *See Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 478-79 (D.N.J. 2002) ("New Jersey's statute of limitations governing personal injury claims, including claims sounding in negligence and strict products liability . . . 'shall be commenced within two years next after the cause of action shall have accrued.'" (emphasis omitted) (quoting N.J. Stat. Ann. § 2A:14-2(a))). New Jersey follows the discovery rule, whereby a claim begins to accrue when a "plaintiff is aware of facts that would alert a reasonable person to the possibility of an actionable claim; medical or legal certainty is not required." *Lapka v. Porter Hayden Co.*, 745 A.2d 525, 530 (N.J. 2000); *see also Lynch v. Rubacky*, 424 A.2d 1169, 1173 (N.J. 1981) ("[T]he

4

discovery rule embraces knowledge of fault . . . a plaintiff must have an awareness of 'material facts' relating to the existence and origin of his [or her] injury rather than comprehension of the legal significance of such facts." (citing *Burd v. N.J. Tel. Co.*, 386 A.2d 1310, 1314-15 (N.J. 1978))).

Merck recites this law and reads LaTouche's Complaint as alleging LaTouche became aware of Remeron ingestion causing gynecomastia in May 2005. (*See* Def.'s Moving Br. 6.) But liberally construing LaTouche's Complaint—as it must for pro se litigants—the Court reads LaTouche's Complaint as alleging awareness only of his gynecomastia diagnosis in May 2005. True enough, although the Complaint recites the clause "as a result of his digestion of R[e]meron" in the same breath as the gynecomastia diagnosis, Merck reads that clause too narrowly. (*See* Compl. ¶ 5.) The Complaint employs that clause non-restrictively, meaning that the clause adds background detail and is otherwise unnecessary to the allegation's understanding. In other words, the allegation does not mean the same as: "The plaintiff was seen by a physician who diagnosed him with gynecomastia that resulted from digestion of R[e]meron." There, the clause is restrictive (i.e., essential) and signifies that a doctor told LaTouche that Remeron caused gynecomastia.[4] Liberally construing LaTouche's Complaint, the Court cannot say that LaTouche's causes of action began accruing in May 2005.

Buttressing the Court's conclusion is that it can reasonably infer that LaTouche has been incarcerated since 2005. Indeed, LaTouche's Opposition Brief clarifies that his incarceration has hindered his access to "material facts relating to the existence and origin of his injury":

> Plaintiff['s] research has been limited by his circumstances and he
> lacks funds to obtain the representation of an attorney and expert

---

[4] Note that this sentence also avoids a comma, a tell-tale sign of a restrictive clause. *See* William Strunk Jr. & E.B. White, The Elements of Style 18-19 (4th ed. 2000) (detailing the difference between restrictive and non-restrictive clauses).

5

> witness. The letter submitted herein illustrate[s] that the [P]laintiff was not in possession of his medical records until sometime in 2015, 2016. It was not until after he was informed . . . about the spike in his gland [in 2021] that Plaintiff came across sufficient information that relates to his condition, an inference [P]laintiff may have not known that he had a cause of because he did not have all the facts necessary to present a complaint and that Plaintiff discovered his injury when he was able to make the connection to his injury and R[e]meron.

(Pl.'s Opp'n Br. *4-5.) Merck cites no law showing that a court cannot toll the statute of limitations when plaintiffs' imprisonment has prevented them from learning about necessary facts relating to a cause of action. That is not to say, of course, that LaTouche's claims aren't time barred. All the Court can say for now is that a possibility of tolling exists, therefore it must await the benefit of discovery to see if Merck's affirmative defense pans out.

    **B.**    **LaTouche Fails to Adequately Plead His Claims.**

Merck, however, is correct that LaTouche has failed to plead a claim for relief. In New Jersey, the New Jersey Products Liability Act (the "Act") "establishe[s] the sole method to prosecute a product liability action" for any action alleging "harm caused by a product, irrespective of the theory underlying the claim." *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 596 (D.N.J. 2015) (first quoting *Tirrell v. Navistar Int'l, Inc.*, 591 A.2d 643, 647 (N.J. Super. Ct. App. Div. 1991); then quoting N.J. Stat. Ann. § 2A:58C-1(b)(3)). Under the Act, plaintiffs may allege theories of design defect and failure to warn. N.J. Stat. Ann. §§ 2A:58C-2, -4. Although LaTouche's Complaint raises common-law claims for strict products liability, the Court will liberally construe the Complaint and presume that the Complaint alleges causes of action under the Act.

The problem, however, is that the Complaint fails to adequately plead those claims. Plaintiffs proceeding under a design-defect theory "must plead either that the product's risk outweighs its harm, or that an alternate design exists." *Mendez v. Shah*, 28 F. Supp. 3d 282, 298

6

(D.N.J. 2014). Similarly, failure-to-warn theories require allegations of a manufacturer's duty to warn, an inadequate warning, and proximate cause. *Id.* at 299 (citing *James v. Bessemer Processing Co.*, 714 A.2d 898, 907 (N.J. 1998); *Coffman v. Keene Corp.*, 628 A.2d 710, 716 (N.J. 1993)). The nine-paragraph Complaint does not meet this challenge. Even liberally construed, it does not allege that Remeron was unduly harmful or that a reasonable alternative existed. Nor does it allege facts giving rise to a reasonable inference that Merck had a duty to warn, inadequately warned LaTouche of the side effects of Remeron, or proximately caused LaTouche's injuries (particularly his 2021 hormonal spike). To be sure, the Court is skeptical of LaTouche's failure-to-warn claim because the Remeron label appears to unambiguously warn of "breast pain," "breast engorgement," and "breast enlargement." (*E.g.*, Cohen Decl. Ex. C (2005 Remeron Label), at *53, ECF No. 5-2.)[5]

## IV. CONCLUSION

The Court dismisses LaTouche's Complaint for failure to state a claim. Because the Court will grant LaTouche leave to amend, LaTouche should correct the deficiencies identified in this Memorandum Opinion in any amended complaint. An appropriate order will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[5] On a motion to dismiss, courts may take judicial notice of FDA-approved drug labels attached to a defendant's motion. *See In re Amarin Corp. PLC Secs. Litig.*, No. 19-6601, 2021 WL 1171669, at *11 (D.N.J. Mar. 29, 2021) (taking judicial notice of drug labels when "the facts in the FDA-approved drug label 'are not subject to reasonable dispute because' those facts 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned,' like the FDA" (quoting Fed. R. Evid. 201(b)(2)); *In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 588 F. App'x 171, 174 n.14 (3d Cir. 2014) (taking judicial notice of drug label when label was "publicly available on the FDA's website" and "complaint explicitly refer[red] to [the] labels").